UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARL WESCOTT,<br><br>   Plaintiff,<br><br> v.<br><br>CRAIG DANIEL, et al.,<br><br>   Defendants. | Case No. 21-cv-10011-JCS<br><br>**ORDER TO SHOW CAUSE WHY COMPLAINT SHOULD NOT BE DISMISSED**<br><br>Re: Dkt. No. 1 |

## I. INTRODUCTION

The Court previously granted an application by Plaintiff Carl Wescott, pro se, to proceed in forma pauperis, *see* dkt. 4,[1] and now reviews the sufficiency of Wescott's complaint against Defendants Craig Daniel; Matthew Gluck; Gordon Atkinson; Justin Sowa; and Gluck Daniel, LLP (the "Firm") under 28 U.S.C. § 1915(e)(2)(B). For the reasons discussed below, Wescott is ORDERED TO SHOW CAUSE why his complaint should not be dismissed with prejudice, by filing a response or amended complaint no later than May 11, 2022. If Wescott does not file a response by that date or fails to cure the defects identified in this order, the case will be reassigned to a United States district judge with a recommendation for dismissal.

The case management conference previously set for April 15, 2022 is CONTINUED to June 3, 2022 at 2:00 PM, to occur via Zoom webinar.

## II. ALLEGATIONS OF THE COMPLAINT

Because a plaintiff's factual allegations are generally taken as true in evaluating the sufficiency of a complaint, this order summarizes Wescott's allegations as if true. Nothing in this

---

[1] The previous order inadvertently misspelled Wescott's name. The Court apologizes for the error.

order should be construed as resolving any issue of fact that might be disputed. This summary is intended as context for the convenience of the reader is and is not a complete recitation of Wescott's allegations.

Wescott was previously employed by non-party SparkLabs Group and served as a mentor to various accelerator funds affiliated with that entity. Compl. (dkt. 1) ¶ 20.[2] He was also a venture partner at SparkLabs, having made an investment of $50,000 in a SparkLabs fund. *Id.* ¶ 22. SparkLabs' founding partner, non-party Bernard Moon, made a number of misrepresentations regarding SparkLabs' organization and funding. *See id.* ¶¶ 23–27, 30–31. SparkLabs lacked the funds to pay Wescott's salary. *Id.* ¶ 32. SparkLabs continued to assure him that his salary would be paid in the future, and Wescott—homeless and having gone through bankruptcy—felt that he had no choice but to rely on those assurances. *Id.* ¶¶ 49–50.

Wescott discovered securities fraud at SparkLabs and refused to invest in or raise money for the funds involved with that fraud. *See id.* ¶¶ 33–42. When Moon informed Wescott that SparkLabs would not take steps to clean up and disclose its securities fraud, Wescott "threatened to whistleblow and tip off the SEC and law enforcement as to the securities fraud." *Id.* ¶¶ 57–58. Wescott in fact submitted multiple tips to the SEC. *Id.* ¶ 60. Based on that conversation, Moon decided to fire Wescott, and not to pay him the salary that was owed. *Id.* ¶ 59, 62–63.

Wescott submitted a claim for wage theft to the California Labor Commissioner against SparkLabs Group. *Id.* ¶ 87. Defendants Daniel and the Firm submitted a response on behalf of a different SparkLabs entity (SparkLabs Global Venture Management, LLC), accurately but misleadingly asserting that Wescott was never employed by that particular entity. *Id.* ¶ 88. Other statements in the filing were false, *id.* ¶ 90 & Ex. G, as were assertions that Daniel made later in the administrative proceedings, *id.* ¶ 97. The Labor Commissioner relied on those misrepresentations, *id.* ¶ 123, apparently ruling against Wescott.[3]

---

[2] Wescott's complaint describes a number of affiliated SparkLabs entities. While the distinctions between those entities may be relevant to Wescott's theory of securities fraud and the dispute before the Labor Commissioner, they are not relevant to the reasons for dismissal stated in this order, which generally refers to all such entities collectively as "SparkLabs."

[3] Wescott does not specifically allege the outcome of his claim before the Labor Commissioner, and because his claims appear to be subject to dismissal on other grounds, this order does not

According to Wescott, Daniel never actually represented any SparkLabs entity, instead serving as Moon's personal attorney. *Id.* ¶ 91. Wescott contends that the litigation privilege does not apply because Daniel's conduct was criminal, violating—among other laws—section 6128(a) of the California Business and Professions Code, which makes deceit by an attorney with intent to deceive a court or opposing party a misdemeanor. *Id.* ¶ 101.

Wescott brings the following claims: (1) "Conspiracy for Wage Theft," asserting that Daniel aided Moon in depriving Wescott of wages, *id.* ¶¶ 109–18; (2) "Negligent Misrepresentation," asserting that Daniel made false statements of material fact to the Labor Commissioner, *id.* ¶¶ 119–26; (3) "Common Law Fraud," based on the same representations to the Labor Commissioner, *id.* ¶¶ 127–32; (4) "Aiding and Abetting Fraud," asserting that Daniel rendered assistance to Moon and SparkLabs' scheme to coerce Wescott's services through fraud, *id.* ¶¶ 133–43; and (5) "Aiding & Abetting Fiduciary Breach," asserting that Daniel rendered assistance to Moon and SparkLabs' breach of duties owed to Wescott as a partner in the venture, *id.* ¶¶ 144–59.

Wescott does not allege any affirmative act misconduct by any of the other individual defendants, but asserts that Atkinson was included as a recipient on relevant emails from Daniel and thus "is liable via conspiracy and ratification," and that Gluck and Sowa are liable under principles of agency based on their partnership with Daniel. *Id.* ¶¶ 3–5.

### III. ANALYSIS

#### A. Legal Standard for Review Under § 1915

Where a plaintiff is found to be indigent under 28 U.S.C. § 1915(a)(1) and is granted leave to proceed in forma pauperis, courts must engage in screening and dismiss any claims which: (1) are frivolous or malicious; (2) fail to state a claim on which relief may be granted; or (3) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Marks v. Solcum*, 98 F.3d 494, 495 (9th Cir. 1996). Rule 8(a)(2) of the Federal Rules of Civil

---

reach the question of whether an adverse ruling in administrative proceedings would have any preclusive effect on the claims Wescott has presented. If Wescott can remedy the issues addressed in this order, however, he must also disclose the outcome of his administrative claims.

Procedure provides that a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that lacks such statement fails to state a claim and must be dismissed.

In determining whether a plaintiff fails to state a claim, the court assumes that all factual allegations in the complaint are true. *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to legal conclusions" and to "mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). The pertinent question is whether the factual allegations, assumed to be true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

Where the complaint has been filed by a pro se plaintiff, as is the case here, courts must "construe the pleadings liberally . . . to afford the petitioner the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). "A district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting *Schucker v. Rockwood*, 846 F.2d 1202, 1203−04 (9th Cir. 1988) (per curiam)).

### B. Claims Against Gluck, Sowa, and Atkinson

Wescott alleges no wrongdoing by Gluck or Sowa. He asserts that each is "by all appearances, a fine attorney and has no involvement whatsoever in the events described, but is liable to [Wescott] via agency." Compl. ¶¶ 3, 5. He offers little more with respect to Atkinson, whom he alleges "was not an active participant," but asserts that because Atkinson was copied on emails from Daniel, he "is liable via conspiracy and ratification," or in the alternative, via agency "as a partner in Gluck Daniel LLP, and Mr. Daniel's partner." *Id.* ¶ 4.

The "LLP" at the end of the Firm's name indicates that it is a limited liability partnership. "The individual partners in a registered limited liability partnership generally are not vicariously liable for partnership obligations that do not arise from the partner's personal misconduct or

4

guarantees." *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, 150 Cal. App. 4th 384, 389 n.3 (2007) (citing Cal. Corp. Code § 16306(c)).  At least in the absence of more specific allegations to support such a theory, Wescott cannot proceed against Gluck, Sowa, or Atkinsons on a theory of agency merely by virtue of those Defendants' limited liability partnership with Daniel.

"Ratification is an agency doctrine[:] . . . the voluntary election by a person to adopt in some manner as his own an act which was purportedly done on his behalf by another person, the effect of which, as to some or all persons, is to treat the act as if originally authorized by him." *City of Brentwood v. Dep't of Fin.*, 54 Cal. App. 5th 418, 436 (2020) (cleaned up).  Wescott does not allege facts showing that Daniel purportedly acted on behalf of Atkinson, or that Atkinson took any voluntary act to adopt Daniel's conduct.  Atkinson merely having received emails from Daniel does not establish ratification.

Finally, as for conspiracy, "[m]ere knowledge of a wrongful act without cooperation or an agreement to cooperate is insufficient to make [a defendant] responsible for the harm" caused by that act.  CACI 3600; *see also Michael R. v. Jeffrey B.*, 158 Cal. App. 3d 1059, 1069 (1984) ("Mere knowledge, acquiescence, or approval of an act, without cooperation or agreement to cooperate is insufficient to establish liability.").  Here, Wescott has alleged nothing more than knowledge and perhaps silent acquiescence by Atkinson.  He has not alleged that Atkinson actually cooperated in Daniel's alleged deception or agreed to do so.

Accordingly, Wescott is ORDERED TO SHOW CAUSE why his claims against Gluck, Sowa, and Atkinson should not be dismissed with prejudice.

### C. Claims Against Daniel and the Firm

Wescott's claims against Daniel and the Firm fall into two categories: (1) claims based on conspiring with or aiding and abetting Moon and SparkLabs in their termination of Wescott's employment; and (2) claims based on Daniel's own purported misrepresentations to the Labor Commissioner during administrative proceedings.  For different reasons, both categories appear to require dismissal.

### 1. Conspiracy Claim and Aiding and Abetting Claims

Wescott's first claim is for "Conspiracy to Commit Wage Theft," Compl. ¶¶ 109–18, his fourth claim is for "Aiding and Abetting Fraud," *id.* ¶¶ 133–43, and his fifth claim is for "Aiding & Abetting Fiduciary Breach," *id.* ¶¶ 144–59. All of these claims are based on assertions that Daniel assisted in wrongdoing primarily committed by Moon and SparkLabs. *See id.* ¶¶ 116, 137–41, 151–57

Section 1714.10 of the California Civil Code imposes special procedural hurdles for claims that seek to impose conspiracy liability on an attorney based on the representation of a client. At least some federal district courts considering that statute have held that it is "procedural in nature," and thus inapplicable in federal court. *E.g.*, *Steel v. City of San Diego*, 726 F. Supp. 2d 1172, 1182 (S.D. Cal. 2010). The Court therefore declines to apply that statute sua sponte, without prejudice to any argument that Defendants might raise if they ultimately appear in this case.

That said, section 1714.10 is closely tied to a substantive doctrine of California common law: the agent's immunity rule. "Simply put, 'under the agent's immunity rule, an agent is not liable for conspiring with the principal when the agent is acting in an official capacity on behalf of the principal.'" *Pavicich v. Santucci*, 85 Cal. App. 4th 382, 394 (2000) (quoting *Fiol v. Doellstedt* 50 Cal. App. 4th 1318, 1326 (1996)). The rule generally applies to an attorney's conduct on behalf of a client, although it has exceptions:

> To be sure, an attorney, acting in the scope of his or her official duties, and not for individual gain, can be liable to third parties in certain circumstances. But those circumstances will always require that the attorney have a duty to the third party. For example, if an attorney commits actual fraud in his dealings with third parties, the fact that he did so in the capacity of attorney does not relieve him of liability. (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 345, 134 Cal.Rptr. 375, 556 P.2d 737; *Greenwood v. Mooradian* (1955) 137 Cal.App.2d 532, 539, 290 P.2d 955.) Similarly, where an "attorney gives his client a written opinion with the intention that it be transmitted to and relied upon by the plaintiff in dealing with the client [,] . . . . the attorney owes the plaintiff a duty of care in providing the advice because the plaintiff's anticipated reliance upon it is 'the end aim of the transaction.' (*Glanzer v. Shepard* (1922) 233 N.Y. 236, 238–239 [135 N.E. 275])" (*Goodman v. Kennedy, supra*, 18 Cal.3d 335, 343, fn. 1, 134 Cal.Rptr. 375, 556 P.2d 737, citing *Roberts v. Ball, Hunt, Hart, Brown & Baerwitz* (1976) 57 Cal.App.3d 104, 111, 128 Cal.Rptr. 901.)

*Id.* at 395. The rule applies equally to aiding and abetting as to conspiracy, and is based on the premise that agents acting within the scope of their duties are legally indistinct from their principal, which can neither conspire with nor aid and abet itself. *Villains, Inc. v. Am. Econ. Ins. Co.*, 870 F. Supp. 2d 792, 796 (N.D. Cal. 2012) (citing *Everest Investors 8 v. Whitehall Real Estate P'ship XI*, 100 Cal. App. 4th 1102, 1108 (2002); *Berg & Berg Enters., LLC v. Sherwood Partners, Inc.*, 131 Cal. App. 4th 802, 835 (2005)).[4]

Here, Wescott's claims for "Conspiracy for Wage Theft," "Aiding and Abetting Fraud," and "Aiding & Abetting Fiduciary Breach" all arise from duties owed to him by Moon and/or SparkLabs—which are not parties to this case—as opposed to duties owed by Daniel or the Firm in their own capacities. All are based on a theory that Daniel and the Firm, while acting as agents, conspired with or aided and abetted their principals Moon and SparkLabs. The Court is aware of no exception to the agent's immunity rule that would encompass these claims. Wescott is therefore ORDERED TO SHOW CAUSE why these claims should not be dismissed with prejudice based on the agent's immunity rule.

### 2. Negligent Misrepresentation and Fraud

Wescott's claims for negligent misrepresentation and fraud are based on representations actually made by Daniel to the Labor Commissioner, rather than merely aiding in wrongdoing by Moon and SparkLabs. *See* Compl. ¶¶ 119–132. As noted above, "if an attorney commits actual fraud in his dealings with third parties, the fact that he did so in the capacity of attorney does not relieve him of liability." *Pavicich*, 85 Cal. App. 4th at 395.

"The elements of fraud are (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damage." *Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 960 (9th Cir. 2013). Here, Wescott does not allege that he himself relied on Daniel's purportedly false statements to the Labor Commissioner, but instead that he was injured by the Labor Commissioner's reliance. The Court is aware of no authority holding such a theory viable

---

[4] California's doctrine of agent's immunity does not apply to federal claims, *see Richards v. County of Los Angeles*, No. CV 17-400 BRO (AGRx), 2017 WL 7411159, at *4 (C.D. Cal. Mar. 31, 2017), but Wescott asserts only claims under California law in this action.

7

under California law.

"It is settled that a plaintiff, to state a cause of action for deceit[5] based on a misrepresentation, must plead that *he or she* actually relied on the misrepresentation." *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1088, 858 P.2d 568, 570 (1993) (emphasis added) (declining to adopt the theory of "fraud on the market" where shareholder plaintiffs had not actually heard or relied on the defendant's misrepresentations). While this Court is not aware of any California state court squarely addressing Wescott's theory of injury due to reliance by a specific third party, New York's highest court dealt with this issue in a 2016 case where the plaintiff alleged that the defendant made false statements the Federal Aviation Administration, which relied on them to revoke the plaintiff's pilot's license. *Pasternack v. Lab'y Corp. of Am. Holdings*, 27 N.Y.3d 817, 827 (2016). The New York court "decline[d] to extend the reliance element of fraud to include a claim based on the reliance of a third party, rather than the plaintiff." *Id.* at 829. A decision from this district has held that California law similarly requires a plaintiff to show their own reliance rather than reliance by a third party. *Russell v. Maman*, No. 18-cv-06691-RS, 2020 WL 10964919, at *4 (N.D. Cal. Apr. 10, 2020) (citing, *e.g.*, *Mirkin* and *Pasternack*).

Negligent misrepresentation differs from fraud in that it "does not require scienter or intent to defraud." *Small v. Fritz Companies, Inc.*, 30 Cal. 4th 167, 173 (2003). It does not, however, relax the requirement to show reliance by the plaintiff. *See, e.g.*, *Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 413, 834 P.2d 745, 772 (1992) ("[A]n instruction based on the elements of negligent misrepresentation necessarily and properly focuses the jury's attention on the truth or falsity of the . . . representations and plaintiff's actual and justifiable reliance on them.").

Wescott is therefore ORDERED TO SHOW CAUSE why his fraud and negligent misrepresentation claims should not be dismissed with prejudice for failure to allege that Wescott himself relied on Daniel's purported false statements.

---

[5] The terms "fraud" and "deceit" are often used interchangeably in California tort law. The California Supreme Court has stated that "fraud," established through the elements set forth above, "gives rise to the tort action for deceit." *Small v. Fritz Cos., Inc.*, 30 Cal. 4th 167, 173 (2003) (citation and internal quotation marks omitted).

## IV. CONCLUSION

For the reasons discussed above, Wescott is ORDERED TO SHOW CAUSE why this action should not be dismissed with prejudice, by filing no later than May 11, 2022 either: (1) an amended complaint remedying the defects identified above; or (2) a response to this order arguing why his present complaint is sufficient to proceed.  Any amended complaint or other response must also address the outcome of the proceedings before the Labor Commissioner.

Any amended complaint must include the caption and civil case number used in this order (21-cv-10011) and the words FIRST AMENDED COMPLAINT on the first page.  Because an amended complaint completely replaces the previous complaint, any amendment may not incorporate claims or allegations of Wescott's original complaint by reference, but instead must include all of the facts and claims Wescott wishes to present and all of the defendants he wishes to sue.  *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992).

**IT IS SO ORDERED.**

Dated: April 13, 2022

JOSEPH C. SPERO
Chief Magistrate Judge